UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM BRISCOE, et al.                                                                    PLAINTIFFS

v.                                                                    CIVIL ACTION NO. 3:02CV-264-S

PREFERRED HEALTH PLAN, INC.                                                     DEFENDANT

### MEMORANDUM OPINION

This matter is before the court on cross-motions of the parties for summary judgment on the remaining claim for breach of fiduciary duty against the defendant, Preferred Health Plan, Inc. ("PHP"), in this action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Summary judgment was granted in the case in favor of PHP. The plaintiffs, William Briscoe, *et al.* (hereinafter collectively, "Briscoe"), appealed. The United States Court of Appeals for the Sixth Circuit reversed with respect to Briscoe's claim of breach of fiduciary duty, stating that "Because PHP exercised control over plan assets, it qualifies as an ERISA fiduciary to the extent that it did so." *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006).

The action was filed by five individuals who were then current or former employees of M. Fine & Sons Manufacturing Co. and were participating in M. Fine's self-funded health insurance plan administered by PHP. As explained by the Sixth Circuit, the plaintiffs became eligible for healthcare benefits in three different ways:

> Lead plaintiff, William "Jack" Briscoe, was an hourly employee whose contributions to the self-funded plan were deducted from his wages of $9.70 per hour. Briscoe signed up for the self-funded plan when he was asked to do so by PHP in March of 2001. On the other hand, plaintiffs Laura Farley, Lawrence Smith, and Michael Straka were all salaried employees whose contributions to the plan were paid by the Company as partial compensation for their work. Finally, Harold Smith, who had left the Company pursuant to a severance agreement prior to the Company's bankruptcy, made individual COBRA payments directly to PHP through April of

- 2 -

>    2001. Unpaid medical bills for these employees ranged from $89 to $30,000, with the total amount of bills left unpaid upon the Company's demise exceeding $300,000.

*Briscoe*, 444 F.3d at 484. In early March of 2001, M. Fine had stopped making payments in support of the plan.[1]

PHP administered the plan pursuant to an Administrative Services Agreement entered into between PHP and M. Fine. By letter dated May 17, 2001, PHP formally terminated that agreement. The letter indicated that the termination was based upon § 8.3 of the Administrative Services Agreement and § 9.3 of the Network Services Agreement which read:

>    8./9.    Termination. This agreement may be terminated forthwith by either party by giving written notice of termination to the other party if...
>
>    8.3/9.3 Either party shall be adjudged as bankrupt, become insolvent, have a receiver of its assets or property appointed, make a general assignment for the benefit of creditors, or institute or cause to be instituted any procedure for reorganization or rearrangement of its affairs.

PHP retained an administrative fee of $5,793.40, and on June 6, 2001, sent a final letter to M. Fine with a check for $2,849.30 representing the balance on hand of COBRA payments made by individuals directly to PHP, and a check for $2,036.99 constituting the remaining funds in the Plan account. *Id.* M. Fine had already filed for bankruptcy protection in the Southern District of New York prior to receiving PHP's letter and the checks. The sums remitted to M. Fine were included in the bankruptcy estate. There were hundreds of thousands of dollars in unpaid claims that were never funded by M. Fine.

What is at issue here, however, is the discrete amount of $10,679.59 for which this court found PHP had a fiduciary obligation to the Plan. *See,* DN 121. On cross-motions, the parties seek

---

[1] In a typical case, PHP would receive a claim from a healthcare provider, process that claim, and if it was covered by the plan, PHP would notify M.Fine of the amount needed to be deposited into the Plan account in order to pay the service providers. The account was financed from the general assets of the company and had no minimum balance, such that the account was designed to "zero out" after PHP dispersed the funds in payment of designated claims. 444 F.3d at 483.

a final adjudication determining whether PHP breached its fiduciary duty to the Plan in its handling of these funds.

First, it is clear that

an ERISA fiduciary cannot cause the plan to engage in a transaction that will work 'a transfer to, or use by or for the benefit of' the fiduciary "of any assets of the plan," [29 U.S.C.] § 1106(a)(1)(D), nor can the fiduciary deal with the plan on its own behalf or on behalf of a party whose interests are adverse to those of the plan. *Id.* § 1106(b)(1), (2).

*Srein v. Soft Drink Workers Union, Local 812,* 93 F.3d 1088, 1097 (2d Cir. 1996). The court in *Srein* found that the payment by CIGNA, who was a fiduciary with respect to certain funds of Local 812 Group Insurance Plan, of a commission from the Plan's reserve account constituted a breach of CIGNA's duty under ERISA to act for the exclusive purpose of either providing benefits to plan beneficiaries or defraying reasonable administrative expenses. The court noted that CIGNA "conducted a form of self-dealing." *Id.* at 1098, and further noted that CIGNA pointed to no contract provision that allowed it to pay Srein out of the assets of the plan. *Id*. We find the same situation in the case before us.

In this case, the Administrative Services Agreement between M. Fine and PHP provided that:

4.1   PHP shall be entitled to a fee for its services to the Plan and under this Agreement which shall be payable in accordance with the Schedule of Fees shown in Attachment A...

4.3   All fees for services under this Agreement shall be due upon receipt by the Payor of invoices from PHP. PHP shall have the right to assess finance charges, at a rate of 1.5% per month, on any amounts not paid within 30 days from the date of the invoice.

PHP states that at the commencement of the contract, PHP invoiced M. Fine for its administrative fees and M. Fine paid the invoice by check. At a later date, M. Fine began to include the stop-loss premiums and administrative fees in the regularly funded weekly check run, rather than paying by separate check pursuant to invoice. Upon terminating the Agreement with M. Fine, PHP wrote itself a check in the amount of $5,793.40 on the Plan account for unpaid administrative fees.

PHP urges that this procedure was permitted by Section 2.6 of the Agreement which stated that "PHP may pay from the Plan Account all or some of the expenses of operation of the Plan incurred pursuant to the performance of the Agreement." However, the specific provision must be found to control over the general provision in the contract. *See,* Farnsworth, E. Allan, Contracts, § 7.11, Rules in Aid of Interpretation ("a specific provision controls a general one and may operate as an exception to it"). Section 2.7 states that insurance premiums and PHP's charges may be Plan expenses. However, "charges" is not defined in the policy. While PHP urges that its administrative fee could be a "charge" under § 2.7, the specific provision for the payment of administrative fees in §§ 4.1 and 4.3 must control. Therefore we conclude, as did the court in *Srein*, that there is no contract provision which permits PHP to simply pay itself an administrative services fee from the Plan account.

Further, the plaintiffs urge, we think correctly, that the Administrative Services Agreement which was entered into between M. Fein and PHP for the management of the Plan is not a Plan document. It is a private contract between the employer and its third-party administrator. As noted in *IT Corporation v. General American Life Insurance Company*, 107 F.3d 1415, 1418 (9th Cir. 1997), "a fiduciary's contract with an employer cannot get it off the hook with the employees who participate in the ERISA plan. They did not sign the contract exonerating the fiduciary." *See also*, *Briscoe v. Fine,* 444 F.3d 478, 492 (6th Cir. 2006)(*citing, IT Corporation, supra.)*. Therefore, were we to find that the contract provision somehow permitted PHP to take an administrative fee in this fashion, we would still conclude that such a provision could not relieve PHP of its fiduciary responsibilities.

A fiduciary under ERISA is bound by a duty of loyalty which is single to the interests of the participants and beneficiaries. *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995). ERISA imposes an unwavering duty to act as a prudent man would act in a similar situation and with single-minded devotion to those same plan participants and beneficiaries. *id.* A fiduciary under ERISA

must act for the exclusive purpose of providing benefits to plan beneficiaries. *Id*. The administrative fee was not an obligation of the Plan, but rather of M. Fine. Thus we conclude that PHP breached its fiduciary duty to the Plan with respect to the payment to itself of a $5,793.40 administrative fee from the Plan account.

PHP paid out the remaining sums to M. Fine in the form of two checks. PHP issued a check in the amount of $2,849.30 representing the COBRA payments made to the Plan through May 23, 2001. It issued a second check in the amount of $2,036.99 for the funds remaining in the Plan account.

We find that the delivery of the funds in the Plan account to M. Fine, even if in accord with the Administrative Services Agreement,[2] was not prudent under the circumstances. PHP knew that M. Fine was in dire financial straits and unable to fund the Plan. That was, in fact, the basis for PHP's termination of the Agreement. PHP knew that $2,849.30 constituted COBRA payments from former M. Fine employees, and that $2,036.99 which remained in the Plan account was an amount "required to fund outstanding payment checks previously approved for release...but which had not cleared the account" as of June 6, 2001. (Letter from PHP to M. Fine, dated June 6, 2001). outstanding claims of plan participants. PHP thus knew that this money was not M. Fine's money, but money belonging to the Plan and its participants. Yet PHP sent the balance of the Plan's account to M. Fine, a bankrupt employer. This was simply not prudent conduct in light of PHP's knowledge of the circumstances, and in light of its fiduciary obligations under ERISA. PHP clearly failed to act for the exclusive purpose of providing benefits to plan participants, but rather constituted a transaction between PHP and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(D).[3]

---

[2] A point which we need not and do not decide.

[3] M. Fine was a "party in interest," as that term is defined in 29 U.S.C. § 1002(14)(C)(including an employer any of whose employees are covered by an employee benefit plan).

For the reasons set forth herein summary judgment will be granted in favor of the plaintiffs, William Briscoe, *et al.*, by separate order.

**IT IS SO ORDERED.**