UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


WILLIAM BRISCOE, et al                                                                    PLAINTIFFS


v.                                                                    CIVIL ACTION NO. 3:02CV-264-S


THE PREFERRED HEALTH PLAN, INC.                                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

In this matter, attorneys David Leightty, Elizabeth C. Fust, and Edward J. Smith, and the firm

of Smith, Greenberg & Napier, PLLC, together with paralegal Katie Burke, moved for an award of

professional fees totaling $104,117.75 and non-taxable costs in the amount of $1,806.65.

The issues were referred to the magistrate judge, who on February 11, 2010, issued findings

of fact, conclusions of law, and a recommendation that professional fees be awarded to the

applicants in the total sum of $94,958.75 together with the non-taxable costs totaling $1,806.65.  The

only reduction recommended by the magistrate judge was as to the appropriate hourly rate for

attorney David Leightty.  The magistrate judge recommended an hourly rate of $225.00 per hour

reduced from Mr. Leightty's requested rate of $250.00 per hour.   The magistrate judge

recommended payment for the full amount of hours submitted by all applicants and at the hourly

rates requested except, as noted, that of Mr. Leightty.

The Preferred Health Plan, Inc. ("PHP"), the party against whom the awards were sought,

filed objections and the issues were thereafter briefed.  Pursuant to the provisions of 28 U.S.C. §

636(b)(1), the recommended fee and expense awards are before the court for a *de novo*

determination.

The underlying facts and procedural history of this litigation have been set out in previous opinions of this court, in two opinions from the United States Court of Appeals for the Sixth Circuit at 444 F.3d 478 (6th Cir. 2006) (*Briscoe I*) and 578 F.3d 481 (6th Cir. 2009) (*Briscoe II*), as well as in the report and recommendation of the magistrate judge.

For purposes of the instant motion, it is necessary only to note that this litigation was commenced in this court in 2002 by five former employees of M. Fine & Sons Manufacturing Company, Inc. ("M. Fine") to recover unpaid amounts due them under M. Fine's self-insured health benefits plan. The named plaintiffs sought to represent a class of other similarly situated M. Fine employees.

The conundrum facing the plaintiffs was that M. Fine had filed for bankruptcy relief and suit against it was therefore precluded. M. Fine was the named fiduciary for the self-insured health benefits plan. Thus, counsel determined that it was "necessary to explore alternative theories of recovery against alternative parties."[1]

The plaintiffs determined to sue five of M. Fine's former officers and directors, all members of the Fine family, as well as PHP, the administrator of the health benefits plan. The litigation was commenced in this court on February 16, 2002.

The plaintiffs sought relief under ERISA, 29 U.S.C. § 1132, and additionally made claims under state law for fraud, breach of contract, interference with employment relations, conversion, and wage and hour violations. The totality of the claims amounted to approximately $300,000.00.

After discovery and motion practice, this court, on October 12, 2004, dismissed all claims against all defendants on motions for summary judgment.

---

[1]Memorandum in Support of Motion for Award of Attorney Fees and Non-Taxable Costs, DN 136.

This court's rulings were appealed to the United States Court of Appeals for the Sixth Circuit, which in April of 2006 entered its opinion in *Briscoe I*. In its opinion, the Court of Appeals upheld this court's dismissal of all of the state law claims, but found that all but one of the claims were preempted by ERISA and should have been dismissed with prejudice. The Court of Appeals also upheld this court's determination that all claims against the members of the Fine family were properly dismissed because none of them became ERISA fiduciaries in the course of hiring a third-party administrator or assigning plan management to a department of human resources.

The Court of Appeals additionally upheld this court's dismissal of all claims against PHP, the third-party administrator, holding that PHP had not become an ERISA fiduciary to the extent it operated under an administrative services agreement giving it responsibility for determining eligibility for benefits, processing claims, and assisting in the production of reports which were required by state and federal law. One aspect of this court's ruling, however, was reversed. Some explanation is required.

M. Fine's ERISA healthcare plan was self-funded. But PHP, *inter alia,* administered the benefits. To accomplish this, M. Fine would transfer monies to PHP so that PHP could pay appropriate claims under the plan.

As M. Fine sank into financial distress, it stopped providing PHP the funds necessary to pay claims. PHP therefore determined to end its role as M. Fine's plan administrator. Funds amounting to roughly $10,000.00 remained from the payments M. Fine had made to PHP.

As permitted by its administrative services plan, PHP deducted the sum of $5,793.40 which was owed to it for administrative fees. The balance, encompassing two separate sums of $2,849.30 and $2,036.99, was refunded directly to M. Fine, which was then still in bankruptcy. The United

States Court of Appeals for the Sixth Circuit determined in *Briscoe I* that PHP's acts in retaining and paying itself $5,793.40 and paying the balance of $4,886.29 back to M. Fine as plan fiduciary indicated at least partial control over assets of the plan. The court held that the plaintiffs "presented competent evidence establishing that PHP exercised control over assets in the Company's self-funded plan by allotting to itself an administrative fee and returning the remaining funds after its relationship with the Company terminated. On these facts, we hold that PHP exercised at least partial control over plan assets and to the extent it did so, qualifies as a fiduciary." *Briscoe I* at 494.

Upon remand, this court determined, consonant with the opinion of the United States Court of Appeals for the Sixth Circuit, that PHP had acted as a fiduciary only to the extent that it exercised control over a total of $10,679.59 of plan assets. This court thereafter rendered judgment in favor of the plaintiffs and against PHP in that amount. The court's ruling was again appealed by the plaintiffs, and was upheld in *Briscoe II*.

To summarize, after extensive litigation in this court and two appeals, the plaintiffs were unsuccessful in all of their claims against all of the defendants save a judgment against PHP in the amount of $10,679.59.

It is upon this slender reed that the plaintiffs' attorneys now claim fees and expenses and upon which the magistrate judge recommended the award of a sum totaling nearly ten times the recovery the plaintiffs achieved against one of six defendants.

## ANALYSIS

There is no question that the *King* factors guide this court's consideration on the fee questions. *Secretary of the Department of Labor v. King*, 775 F.2d 666, 669 (6th Cir., 1985). We

begin with the proposition that the award of fees and costs is discretionary, but if allowed must be reasonable. 29 U.S.C. § 1132(g)(1).

The first *King* factor requires that the court consider the degree of the opposing party's culpability or bad faith.

Contrary to the conclusion of the magistrate judge, this court finds that PHP's culpability is, on balance, minuscule.

Obviously, PHP is culpable, or we would not be at this juncture. But in retaining its duly-earned administrative fee and returning the balance to M. Fine, PHP was acting in accordance with its contractual agreement with M. Fine. There is no contention that PHP overpaid itself, or in any way purloined plan assets. While PHP's actions were perhaps, in retrospect, unwise, their only legal effect was that to the extent of $10,679.59, PHP exercised control over plan assets and therefore is deemed an ERISA fiduciary. The upshot was that PHP had to pay the money back. Not only its duly earned administrative fee, but the sums it paid to M. Fine which no doubt became small additions to M. Fine's bankruptcy estate.

There is not one iota of evidence of bad faith on the part of PHP. Legally culpable conduct, but nothing beyond.

In fact, PHP's treatment of $10,679.59 worth of plan assets subjected it to years of litigation, and claims that it should have to pay, out of its own funds rather than M. Fine's, some $300,000 worth of unpaid ERISA benefits due M. Fine's employees. Those claims were rejected by this court, and by the United States Court of Appeals for the Sixth Circuit in two subsequent appeals.

The plaintiffs' similar $300,000 claims against the Fine family members were also rejected by this court and the United States Court of Appeals for the Sixth Circuit.

When all is said and done, the plaintiffs' level of success against the parties they chose to sue was quite modest.

The court agrees with the magistrate judge's conclusion that the second *King* factor, ability to pay, presents no impediment to awarding fees and costs against PHP.

The third *King* factor, the deterrent effect of a fee and expense award, requires some additional comment. The magistrate judge found that the large award he recommended would deter future ERISA plan administrators from disbursing plan assets "outside the provisions of the plan administered."[2]

Obviously, there is truth to the magistrate judge's conclusion. The larger the fee award, the greater the deterrent. But the question is how much deterrence is needed in a case in which the plan administrator exercised control over plan assets by paying itself a duly earned fee for plan administration and returned the small balance to the plan fiduciary, albeit inappropriately, because the fiduciary was in bankruptcy. Under circumstances where there is no bad faith, and where the plan administrator acted inappropriately from a legal standpoint but certainly in compliance with the administrative services plan under which it was operating, it seems to this court that the necessity of deterring future plan administrators from engaging in similar conduct is hardly overwhelming.

The fourth *King* factor, requiring the court to consider whether the parties requesting fees and expenses sought to benefit all participants and beneficiaries or to resolve a significant legal question requires little comment. The plaintiffs sought class treatment of their original claims. Class treatment was denied when the court found the claims legally invalid. The plaintiffs' attempt to make the members of the Fine family responsible for unpaid employee benefits was unsuccessful.

_____

[2]Findings of Fact, Conclusions of Law and Recommendation, page 18, DN 151.

Their attempt to make PHP similarly responsible also failed, except to the extent of less than $11,000.00. These factors do not militate in favor of an award.

The last *King* factor, the relative merits of the parties' positions, perhaps captures all that has been previously said about this matter. Counsel for the plaintiffs fought a good fight, and a persistent fight. They are good lawyers. They have represented their clients well. It cannot be ignored, however, that their claims were almost completely unsuccessful. Their attempts to recover from PHP the sums PHP inappropriately paid to itself and returned to M. Fine were, with certainty, meritorious. To the extent that a legal result was obtained, it must be viewed as vindicating the proposition that a plan administrator may not rely solely on the administrative services plan under which it operates, but must also be cognizant of the requirements of federal law.

The merits of the plaintiffs' claims against the Fine family defendants were, in a word, lacking.

The plaintiffs' attorneys should be lauded, because they did not give up their quest in spite of facing adversity at many turns. But this court's admiration for counsels' professionalism must be tempered by a reality check. The plaintiffs recovered against only one of six defendants, and that recovery was rather modest. On the other hand, counsel certainly contributed to the *corpus juris* by vindicating the proposition that ERISA plan administrators exercise control over plan assets at their potential peril.

The court concludes that the recommendation of the magistrate judge for fees and expenses, which is many times the sum recovered, must be rejected. However, it is also clear that some fee award is appropriate.

The court cannot disagree with the magistrate judge's calculation of the fee awards to the extent that the amounts reflect lodestar hours and appropriate hourly rates. But factoring in the *King* considerations and the ultimate level of success, the court believes that an award of 25% of the amounts recommended by the magistrate judge will appropriately reflect both the applicable legal considerations in this circuit as well as the ultimate result in this case.

Accordingly, Mr. Leightty is awarded the sum of $16,129.69, Ms. Fust is awarded $4,891.50, Mr. Smith and his firm are awarded $1,255.31, paralegal Katie Burke is awarded the sum of $242.00, and Mr. Leightty is awarded additionally the sum of $1,221.19 for preparing the petition. Non-taxable costs are awarded in the sum of $1,806.65. Except to the extent provided herein, the Findings of Fact, Conclusions of Law and Recommendation of the magistrate judge are otherwise **AFFIRMED**.

**IT IS SO ORDERED** this

cc:     Counsel of Record